**RICHARD R. BEST**
**REGIONAL DIRECTOR**
**Sanjay Wadhwa**
**Judith Weinstock**
**Nancy A. Brown**
**Shannon Keyes**
**Attorneys for the Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**(212) 336-1023 (Brown)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
|  | : | |
| Plaintiff, | : | **21 Civ.   (   )** |
|  | : | |
| v. | : | |
|  | : | **COMPLAINT AND** |
| **JAESON BIRNBAUM,** | : | **JURY DEMAND** |
|  | : | |
| Defendant. | : | |

---------------------------------------------------------- x

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Jaeson Birnbaum ("Birnbaum"), alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1.      Birnbaum defrauded at least four investors in the course of selling them debt

securities in his litigation funding business, Cash4Cases, Inc. ("Cash4Cases").  Birnbaum

defrauded investors by, among other things, falsely promising them that their investments were

secured by collateral, which did not exist or had already been pledged to others; by making

misrepresentations as to the use of investor funds; and by misappropriating investors' funds for

personal use.

2.      Birnbaum was the President of Cash4Cases and he owned, controlled, and

operated Cash4Cases as well as its affiliates.  Cash4Cases operated in New York and New Jersey from around 2010 until January 2020, when Birnbaum filed a Chapter 7 Bankruptcy petition for Cash4Cases and its affiliates.

3.      In its litigation funding business, Cash4Cases made loans to individual tort litigants (the "Funded Litigants"), taking a security interest in their expected litigation recoveries up to the amount of the loan, plus interest.  Cash4Cases funded the loans to the Funded Litigants in part through money borrowed from institutional lenders.  Cash4Cases assigned those lenders security interests Cash4Cases held in the expected litigation recoveries of the Funded Litigants. Cash4Cases also raised money by selling its security interests in some Funded Litigants' recoveries to institutional funders.

4.      Cash4Cases also turned to individual investors for funding.  Through Birnbaum, Cash4Cases sold individual investors Cash4Cases' securities styled as promissory notes. Birnbaum and Cash4Cases purported to secure the promissory notes by pledging Cash4Cases' security interests in certain Funded Litigants' litigation recoveries to the individual investors.

5.      As detailed below, Birnbaum made several material misrepresentations to four individual investors to obtain their investments.  Birnbaum also misappropriated investor funds from at least two of the individual investors to support his lifestyle and make Ponzi-like payments to earlier funders and investors.

**VIOLATIONS**

6.      By virtue of the conduct alleged herein, Birnbaum directly or indirectly, singly or in concert, violated Sections 17(a)(l), (2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(l), (2) and (3)], or, in the alternative, Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], by aiding and abetting Cash4Cases' violations of Sections 17(a)(l), (2) and (3)

of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)]; and Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c)

thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)], or, in the alternative, Section 20(e) of the

Exchange Act [15 U.S.C. § 78t(e)] by aiding and abetting Cash4Cases' violations of Section

10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17

C.F.R. §§ 240.10b-5(a), (b) and (c)].

7.      Unless Birnbaum is restrained and enjoined, he will engage in the acts, practices,

transactions and courses of business set forth in this Complaint, or in acts, practices, transactions,

and courses of business of similar type and object.

## JURISDICTION AND VENUE

8.      The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Sections 21(d)(l), 21(d)(5) and

(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(d)(5), and 78u(d)(7)], seeking a final

judgment:  (a) permanently enjoining Birnbaum from engaging in the acts, practices and courses

of business alleged against him herein; (b) ordering Birnbaum to disgorge all ill-gotten gains and

to pay prejudgment interest on those amounts; (c) prohibiting Birnbaum from acting as an officer

or director of a public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. §

77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and (d) ordering

Birnbaum to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C.

§ 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

9.      This Court has jurisdiction over this action, and venue lies in this District,

pursuant to Section 22(a) of the Securities Act [15. U.S.C. § 77v(a)] and Sections 21(d) and 27

of the Exchange Act [15. U.S .C. §§ 78u(d) and 78aa].  Birnbaum, directly or indirectly, made

use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the transactions, acts, practices, or courses of business alleged herein, certain of which occurred in this District. For example, at times relevant to this Complaint, Birnbaum maintained a residence in Manhattan, and operated Cash4Cases and its affiliates from an office in Manhattan. The bankruptcy proceedings initiated by Birnbaum for Cash4Cases and its affiliates under Chapter 7 of the Bankruptcy Code were filed and are pending in this district, and are being jointly administered under In re Liberty Bridge Capital Management, GP, LLC, et al., No. 20 Bk. 10009 (SCC) (S.D.N.Y.).

## DEFENDANT

10.     **Birnbaum**, age 47, currently resides in Boca Raton, Florida. During the relevant period, he resided part time in New York, New York. At all times relevant, Birnbaum was a licensed attorney in New York. During the relevant period, he served as the sole owner, sole director and president of Cash4Cases, and owned and operated each of its affiliates.

## OTHER RELEVANT ENTITIES

11.     **Cash4Cases** is a litigation funding company that provided non-recourse litigation advances to tort litigants pending resolution of their lawsuits by settlement, trial verdict or dismissal order. In exchange for each advance, the Funded Litigants would assign a security interest to Cash4Cases in any recovery that might be obtained from their lawsuits up to the amount of the advance, plus interest. Birnbaum incorporated Cash4Cases in New Jersey in 2007, but operated the business from offices in both New Jersey and New York during the relevant period. Birnbaum filed a Chapter 7 bankruptcy petition in the Southern District of New York on behalf of Cash4Cases on January 3, 2020. In re Cash4Cases, Inc., 20 Bk. 10010 (SCC) (S.D.N.Y.)

4

12.     Birnbaum incorporated, controlled and operated several other affiliated entities that he used to hold some of the security interests in cases he financed, including **Liberty Bridge Capital Management LP ("Liberty Bridge Capital LP")** — controlled by Birnbaum through his position as sole member of its general partner, **Liberty Bridge Capital Management GP, LLC**— and two series of Liberty Bridge Capital LP, **Diversified Pre-Settlement Portfolio I** ("Diversified I"), and **Diversified Pre-Settlement Portfolio II** ("Diversified II"). As described more fully below, Birnbaum set up Diversified I and Diversified II to acquire certain interests in tort lawsuit recoveries that Cash4Cases had acquired from the Funded Litigants in exchange for funding advances, typically from Cash4Cases, but he also funded some advances directly through Diversified II.

13.     Birnbaum also incorporated a Delaware limited liability company, **Liberty Bridge Finco, LLC** ("Finco"), of which he was the sole member, to acquire certain security interests held by Cash4Cases. Birnbaum then assigned the interests held by Finco to either Diversified I or Diversified II, and sometimes those interests were further assigned to institutional lenders. (Liberty Bridge Capital LP, Liberty Bridge Capital Management GP, LLC, Diversified I, Diversified II and Finco are collectively referred to as the "Affiliates.") On January 3, 2020, Birnbaum filed Chapter 7 petitions in bankruptcy for each of the Affiliates. By Order entered January 10, 2020, the Bankruptcy court directed the joint administration of Cash4Cases' and the Affiliates' proceedings under the Liberty Bridge Capital Management GP, LLC, 20 Bk. 10009 (SCC) (S.D.N.Y.) caption.

## FACTS

**A.     Background**

14.     Beginning in or around 2010, Birnbaum set up websites and used his connections

to lawyers in the tort bar to solicit tort litigants who needed funding for living or medical expenses while their lawsuits were pending.  Cash4Cases employed underwriters to review the tort litigants' medical and legal files to determine the likelihood of their ultimate litigation recovery, and the value of the tort litigants' claims.  With those assessments, Cash4Cases determined the amount of money to loan to tort litigants while their claims were pending resolution by settlement or judgment.

15.    In return for the amounts advanced, the Funded Litigants granted Cash4Cases a security interest in their potential litigation recoveries up to the loaned amount, plus interest. The Funded Litigants and Cash4Cases memorialized the loans and the security interests in funding agreements Birnbaum furnished and signed  (the "Funding Agreements") on behalf of Cash4Cases (or one of its Affiliates).  The Funded Litigants and the lawyers handling their law suits also signed the Funding Agreements.

16.    At times, Cash4Cases advanced funds to the same Funded Litigant on multiple occasions, entering into separate Funding Agreements for each loan, and taking a security interest in the Funded Litigant's litigation recovery equal to each amount advanced, plus interest until pay-off.

17.    While Cash4Cases employed underwriters to review the loan applications, including the tort litigant's legal and medical files, and to recommend funding amounts, all final decisions about whether and how much money to advance any particular litigant resided with Birnbaum.

18.    Cash4Cases obtained financing for its loans to Funded Litigants from three sources:  (i) commercial loans from institutional lenders secured by security interests against all of Cash4Cases' assets, or a portfolio of security interests Cash4Cases had obtained in Funded

6

Litigants' litigation recoveries; (ii) sales to institutional funders of selected Cash4Cases' security interests in Funded Litigants' litigation recoveries, with Cash4Cases retaining the servicing role with respect to the Funding Agreements; and (iii) investments by individual investors in Cash4Cases' promissory notes collateralized with security interests in litigation recoveries of selected Funded Litigants.

19.    As early as 2010 and continuing through at least September 2019, Birnbaum solicited a handful of friends and acquaintances to invest in Cash4Cases promissory notes.

20.    "Investor A" is an attorney whose office is in the New Jersey office building in which Cash4Cases had an office.  Investor A met Birnbaum in 2014 or 2015.  A personal injury lawyer, Investor A also steered some of his own clients to Cash4Cases for litigation funding.

21.    "Investor B" was introduced to Birnbaum through Investor A sometime in 2016. "Investor C" was introduced to Birnbaum through Investor B in early 2017.

22.    "Investor D" was introduced to Birnbaum through Birnbaum's mother in November 2018.  Investor D was seeing Birnbaum's mother professionally for psychoanalysis and therapy.  In the course of their therapy sessions, Investor D confided in Birnbaum's mother that she was anxious about her financial future.  Birnbaum's mother told Investor D that her son ran a highly successful business, and she suggested that Investor D speak to him about investment opportunities.

23.    In each introductory conversation with Investors A, B, C and D, Birnbaum generally explained his business model and solicited each of them to purchase Cash4Cases' promissory notes.  Birnbaum assured each of them that his or her investment would be collateralized by security interests in the Funded Litigants' litigation recoveries.

24.    In his discussions with Investors A, B, C and D, Birnbaum represented that

7

Cash4Cases had been successful in its selection of cases to fund. But he also offered each investor his own personal guarantee that each of them would recoup his or her investment out of Birnbaum's own personal assets regardless of the outcome of any particular Funded Litigant's law suit.

**B.   Investor Security Agreements Cash4Cases Offered to Individual Investors**

25.   From at least 2017 through at least September 2019, Birnbaum solicited investments from Investors A, B, C and D in Cash4Cases' litigation funding business, and offered each of them an almost identical form of investment agreement, called "Investor Security Agreement" ("ISA").

26.   Each ISA Birnbaum and Cash4Cases offered and sold to Investors A, B, C and D constituted a security as defined in the Securities Act and the Exchange Act.

27.   Each ISA identified the investor as "Investor" and Cash4Cases as the "Borrower." The term of each ISA was typically one year, and while the interest rate fluctuated from investor to investor, it ranged from 12 to 20% per year, payable monthly. In some ISAs, Cash4Cases' monthly payments consisted of both interest and principal payments; but in others, the monthly payments consisted entirely of interest, with the final payment scheduled to return the investor's principal as well.

*(1)   Cash4Cases' ISAs with Investors B, C and D*

28.   Each of the ISAs that Cash4Cases, through Birnbaum, offered and sold to Investors B, C and D granted a security interest in "Collateral" listed on an "Addendum A." Each ISA recited that Cash4Cases was granting the security interest in the Collateral "to secure the payment and performance in full" of the Cash4Cases' obligations under the agreement.

29.   Addendum A listed a selection of pending or settled lawsuits, by internal

8

Cash4Cases case number or Funded Litigant name, and an "amount," which was either titled "Amount Funded," "Total Amount Funded," or "principal_amt funded," all signifying the amount or the total amount (if multiple advances) that Cash4Cases had advanced that particular Funded Litigant.

30.     Below the list of collateral contained in Addendum A in each of the ISAs provided to Investors B, C and D, Birnbaum included the following attestation to the truth of the information provided in the list:  "Under the penalties of perjury, I declare that I have examined the above pledged collateral, and to the best of my knowledge it satisfies all of the warranties contained in the Investor Security Agreement."  Birnbaum signed that representation twice:  once on behalf and as president of Cash4Cases, and once in his individual capacity.

31.     Each of the ISAs provided to Investors B, C and D by Birnbaum and Cash4Cases included the following warranty:  "Borrower [Cash4Cases] warrants that the collateral is in good standing as of the date of this contract and free on [sic] any liens."

32.     Each of the ISAs provided to Investors B, C and D also contained (i) Cash4Cases' acknowledgment that the investor would not participate in the selection of the particular Funded Litigant's case offered as collateral, or the management and collection of the loans Cash4Cases had made to the Funded Litigants; and (ii) Cash4Cases' assurance of repayment irrespective of the performance of the cases that supported the security agreements granted to each investor:  "While it is acknowledged that investor will rely on representations made by Borrower [Cash4Cases], Investor is not in the business of lawsuit funding and therefore will not participate in the success or failure of the outcome of the attached collateral as a means of repayment. Borrower agrees to pay investor [the principal plus interest amount] out of pocket as specified above regardless of the outcome of the Collateral."

9

### (a)    Investor C's Investments in Cash4Cases

33.    Pursuant to ISAs dated July 21, 2017 and July 26, 2019, Investor C invested $1,300,000 in Cash4Cases.  While the July 2017 ISA provided for full return of principal ($1,000,000) and interest in one year, Investor C orally agreed with Birnbaum to extend the agreement by one year in June 2018 and again in June 2019, with Cash4Cases making monthly interest payments of 17% per annum.  The term of Investor C's July 2019 ISA, by which he invested another $300,000 in Cash4Cases, was four months, with $330,000 due on November 26, 2019.  Although Investor C received interest payments on his July 2017 investment through November 1, 2019, he received none of his July 2017 ISA principal back.  Cash4Cases paid no interest and repaid none of the principal Investor C had invested pursuant to his July 2019 ISA.

### (b)    Investor B's Investment in Cash4Cases

34.    Pursuant to an ISA dated March 27, 2018, Investor B invested $200,000 in Cash4Cases, expecting to receive a total of $230,000 at the end of 12 months, paid in 11 monthly installments of $2,500, with a final payment of $202,500 in the last month.  Cash4Cases made payments to Investor B through November 2019, but failed to return $190,000 of Investor B's principal to him under the March 27, 2018 ISA.

### (c)    Investor D's Investments in Cash4Cases

35.    Pursuant to ISAs dated December 1, 2018 and September 19, 2019, Investor D invested $1,500,000 in Cash4Cases — $500,000 in December 2018 and $1 million more ten months later.  With respect to both Investor D investments, Cash4Cases agreed to make monthly interest payments of 12% per annum, and to return the principal in the final installment. Cash4Cases made regular monthly payments until January 2020 on Investor D's December 2018 investment, returning all but $5,000 in agreed-upon interest, but it returned none of her principal

investment.  Rather than paying her the agreed-upon $10,000 per month on her September 2019 investment, Cash4Cases paid Investor D a total of $14,275 through January 3, 2020, and returned none of her principal.

### (2)    Cash4Cases' ISAs with Investor A

36.    Investor A's ISAs with Cash4Cases differed in three respects from those Birnbaum signed with Investors B, C and D.  In place of an Addendum A — listing the Funded Litigants' cases which Cash4Cases identified as the "Collateral" — in each of Investor A's agreements, Cash4Cases purported to grant Investor A all of its interest in the full estimated settlement value of a single Funded Litigant's ongoing lawsuit.  Thus, for example, in the July 1, 2019 ISA with Investor A, by which he invested $50,000, Cash4Cases recited:  "To secure the payment and performance in full of the Obligations, Borrower grants to Investor a security interest in the ["K.R."] case which has and [sic] estimated settlement value of $2,500,000.00."

37.    In addition, Cash4Cases provided no acknowledgement in Investor A's ISAs that Investor A would have no participation in Cash4Cases' business, such as the selection of Funded Litigants or the management of the loans made to them.  But just like Investors B, C and D, Investor A in fact played no role in the selection of collateral or in managing the Funded Litigants' loans.

38.    As in the ISAs Cash4Cases sold to Investors B, C and D, in its ISAs with Investor A, Cash4Cases committed to paying Investor A his principal and interest "out of pocket as specified above regardless of the outcome of the [Funded Litigant's] case."

39.    Finally, none of Investor A's ISAs contained any written representation that Cash4Cases' security interest in any particular case recovery was free and clear of any prior liens.  And although Birnbaum orally assured Investor A that he was personally guaranteeing his

11

investment (as he had represented to Investors B, C and D), Birnbaum did not sign Investor A's ISAs in his personal capacity.

### (a)     Investor A's Investments in Cash4Cases

40.     Pursuant to four separate ISAs, dated February 1, 2019, July 1, 2019,  and two dated August 16, 2019, Investor A invested $170,000, with a promised return of 20% payable monthly, and the principal balance due one year later.  In the fall of 2019, Cash4Cases stopped making its monthly payments on Investor A's investments, and never repaid Investor A any of his principal.

### C.     Birnbaum and Cash4Cases Made Material Misstatements to Investors or Omitted Material Information Necessary to Make Their Statements Not Misleading

#### (1)     Birnbaum and Cash4Cases Misrepresented the Value of the Security Interest Cash4Cases Was Pledging

41.     Birnbaum made material misrepresentations about the dollar value of the security interest he was granting through Cash4Cases as collateral for the promissory notes he was selling to investors.

42.     In the ISA Birnbaum signed on behalf of Cash4Cases with Investor C, dated July 26, 2019, by which Investor C invested $300,000, Cash4Cases granted a security interest to Investor C in the recoveries from the lawsuits identified on the attached "Addendum A," defined as "Collateral," up to the amount Cash4Cases had advanced the Funded Litigant.

43.     Each case listed on Investor C's July 26, 2019 ISA Addendum A included a column titled "Total Amount Funded," listing a dollar amount, and at the end of the list appeared a line titled "Net Amount," which purported to add up the Total Amount Funded column, for a total of $952,050.  By including the "Total Amount Funded" column and the "Net Amount" line on Addendum A, Birnbaum knew or was reckless in not knowing that Investor C would

12

understand that Cash4Cases was assigning to him security interests valued at more than $950,000 as collateral for his $300,000 investment.

44.     Birnbaum signed both the ISA (on July 30, 2019), and separately signed a statement below the list of collateral on Addendum A declaring, under penalties of perjury, that he had "examined the above pledged collateral, and to the best of my knowledge it satisfies all of the warranties contained in the Investor Security Agreement."

45.     All five cases listed on Investor C's July 26, 2019 Addendum A provided a "Total Amount Funded" number of more than $150,000.  Nonetheless, Funded Litigants in four of the five lawsuits listed had received a fraction of the funding Cash4Cases and Birnbaum represented that they had been advanced on Addendum A.  For example, although Addendum A listed Case No. 19-00092 as having received total funding of $182,250, in reality, Cash4Cases had advanced less than $20,000 to the Funded Litigant through two Funding Agreements signed by Birnbaum between November 2018 and January 2019.  Thus, neither Cash4Cases nor Investor C had a security interest in Case No. 19-00092 of more than $20,000 plus whatever interest was due since the earliest advance had been made nine months earlier.

46.     Because Birnbaum signed both Funding Agreements with the Funded Litigant in Case No. 19-00092, he knew or was reckless in not knowing that Cash4Cases' interest in the Funded Litigant's recovery from that case was far less than the $182,250 he was representing to Investor C.

### (2)     *Birnbaum and Cash4Cases Pledged Assets in Which Cash4Cases Never Held Any Security Interest*

47.     On behalf of Cash4Cases, Birnbaum and Cash4Cases granted security interests to investors in case recoveries in which Cash4Cases never held any security interest, thus leaving investors with no security interest at all.

13

48.     For example, on July 1, 2019, Birnbaum signed an ISA on behalf of Cash4Cases with Investor A.  Investor A's agreement provided that in return for Investor A's investment of $50,000, Cash4Cases would pay him a total of $60,000 in monthly installments over one year and granted him a security interest in the "[K.R.]" case "which has and [sic] estimated settlement value of $2,500,00.00."

49.     However, Cash4Cases had made no advances to the Funded Litigant in the K.R. case, and therefore had no security interest to grant.  In fact, Birnbaum, acting through his entity Liberty Bridge LP (and specifically the Diversified II series of that limited partnership), had made the advances to the Funded Litigant in the K.R. case, not Cash4Cases — a fact Birnbaum knew because he made all funding decisions on behalf of Diversified II and signed two separate funding agreements with K.R. on behalf of Diversified II.  Those Funding Agreements granted Diversified II a lien and security interest in the proceeds of any settlement or pay out on the Funded Litigant K.R.'s litigation recovery up to the amount advanced plus interest.  As a result, Cash4Cases had no interest to grant to Investor A, despite Birnbaum's representations to the contrary.

50.     Like Investor A, Investor C also received a grant of security interests from Cash4Cases that Cash4Cases did not hold.  Pursuant to an ISA with Investor C, dated July 26, 2019, Cash4Cases, through Birnbaum, granted Investor C security interests in the recovered proceeds from three lawsuits that had been funded by Diversified II, not Cash4Cases:  Case Nos. 19-00894; 19-01098; and 19-01099.  As was true with the security interest in the K.R. case pledged to Investor A, the three funding agreements with the Funded Litigants were signed by Birnbaum (on behalf of Diversified II) and he knew, or was reckless in not knowing that Cash4Cases had no interest in those cases when he signed Investor C's ISA on Cash4Cases'

14

behalf.

51.    Both Investor C and Investor A viewed the existence of collateral to secure their investments in Cash4Cases as important to their decisions to make their respective investments. Birnbaum's representations on behalf of Cash4Cases to each of them that their investments were secured by the security interests that Cash4Cases was assigning them were therefore material.

### (3)    *Birnbaum and Cash4Cases Pledged the Same Security Interest to More than One Investor or Funder*

52.    A feature of each of the ISAs Birnbaum signed on behalf of Cash4Cases with Investor B, Investor C, and Investor D was Cash4Cases' representation and warranty that the security interest assigned to each of those investors in each of the cases appearing in the contract was "in good standing as of the date of this contract and free o[f] any liens."  In addition to Cash4Cases' explicit warranty, each of these investors understood that the security interests pledged to them were specific and unique collateral securing their respective investments only, an understanding that was important to each of their decisions to invest.

53.    As Birnbaum knew, or was reckless in not knowing, however, not all of the security interests Cash4Cases assigned to Investor B, Investor C and Investor D were free of any liens.  In fact, Birnbaum and Cash4Cases granted security interests to those investors that Cash4Cases had already assigned to other funders or investors.

### (a)    **Prior to Pledging a Security Interest to Investor B, Cash4Cases Had Already Pledged the Same Security Interest to Another Funder**

54.    Investor B invested $200,000 in Cash4Cases on or about March 27, 2018 pursuant to an ISA of the same date.  Pursuant to that agreement, Cash4Cases agreed to pay Investor B $2,500 each month for the first 11 months, with the balance of $202,500 due one year from the contract's signing date, giving Investor B a 15% percent return on his investment.

55.    As collateral for his investment, Cash4Cases granted Investor B a security interest in the recoveries from a list of cases attached to the ISA as Addendum A, up to the amounts advanced to the Funded Litigants litigating those cases, plus interest.

56.    However, with respect to at least one of the Addendum A cases — Case No. 18-00343 — Birnbaum's representation that the collateral was free of prior liens was false.  As Birnbaum knew, or was reckless in not knowing, Cash4Cases had already granted an identical security interest for the same amount to a lender to Cash4Cases, "Lender LF," on March 1, 2018, leaving Investor B with no security interest in that portion of that Funded Litigant's recovery.

(b)    **Cash4Cases Pledged Multiple Security Interests to Investor D that It Had Already Assigned to Other Funders**

57.    Birnbaum's assignment of the same security interest to more than one funder escalated in later periods.  For example, Addendum A to Investor D's December 1, 2018 ISA includes eight separate cases as to which Cash4Cases had previously granted an identical interest to one or more separate funders:

| Case No. on Investor D's Addendum A | Addendum A Funded Amount | Prior Security Interest Granted Date | Prior Security Interest Amount | Prior Security Interest Holder |
|---|---|---|---|---|
| 18-00038 | $6,370 | | | |
| | | 06/06/18 | $6,370 | Lender LF |
| | | 05/17/18 | $6,370 | "Lender MF" |
| 18-01474 | $5,275 | | | |
| | | 05/17/18 | $5,275 | Lender MF |
| 18-01475 | $9,229.44 | | | |
| | | 09/20/18 | $9,229.44 | Lender MF |
| 18-01943 | $5,250 | | | |
| | | 11/28/18 | $5,250 | Lender MF |
| 17-00053 | $15,250 | | | |
| | | 04/11/18 | $15,250 | Lender MF |
| | | 06/16/18 | $15,520 | Diversified I |
| 17-01646 | $9,546.02 | | | |
| | | 06/16/18 | $9,546.02 | Diversified I |
| | | 12/01/18 | $2,550 | Lender LF |
| 18-00343 | $5,768.08 | | | |

| | | 03/01/18 | $5,768.08 | Lender LF |
| | | 03/27/18 | $5,768.08 | Investor B |
| | | 06/16/18 | $5,768.08 | Diversified I |
| 18-00941 | $6,000 | | | |
| | | 08/01/18 | $6,000 | "Investor EKD" |
| | | 12/01/18 | $6,000 | "Investor LF" |

58.    With respect to Investor D's September 19, 2019 ISA, Cash4Cases granted security interests in more than twenty different Funded Litigants' litigation recoveries up to the amounts advanced to them.  But Cash4Cases had already pledged an identical security interest to different investors or lenders with respect to eight of those cases:

| Case No. on Investor D's Addendum A | Addendum A Funded Amount | Prior Security Interest Granted Date | Prior Security Interest Amount | Prior Security Interest Holder |
|---|---|---|---|---|
| 19-00276 | $5,525 | | | |
| | | 04/12/19 | $5,525 | Lender MF |
| 19-00373 | $11,259.26 | | | |
| | | 03/21/19 | $11,259.26 | Lender MF |
| 19-00391 | $225,468 | | | |
| | | 05/01/19 | All of Cash4Cases' interest | Investor A |
| 19-00440 | $8,175 | | | |
| | | 04/12/19 | $8,175 | Lender MF |
| 19-00494 | $1,425 | | | |
| | | 04/12/19 | $1,425 | Lender MF |
| 19-00668 | $21,566.90 | | | |
| | | 04/30/19 | $21,566.90 | Lender MF |
| | | 05/20/19 | All of Cash4Cases' interest | Finco |
| 19-00660 | $29,940 | | | |
| | | 04/30/19 | $29,940 | Lender MF |
| 19-00729 | $19,033.34 | | | |
| | | 05/14/19 | $19,033.34 | Lender MF |
| | | 05/20/19 | All of Cash4Cases' interest | Finco |

      **(c)**     **Cash4Cases Pledged a Security Interest in Recoveries on a Case to Investor C that It had Previously Assigned or Sold to Two Different Funders**

59.     On Addendum A to Investor C's July 26, 2019 ISA, Birnbaum purported to list cases (and the amounts funded by Cash4Cases) in which Cash4Cases had a security interest that it was assigning to Investor C as collateral for his investment. Addendum A listed one of those cases, Case No. 19-00092, as having a "Total Amount Funded" of $182,250. But Birnbaum did not disclose to Investor C that Cash4Cases had already sold at least part of its interest in the recoveries from Case No. 19-00092 — $8,160 — to "Lender WP" on May 6, 2019, more than two months prior to its agreement with Investor C. Nor did he disclose that Cash4Cases had granted a security interest in the same funded amount of $8,160 a week prior to its sale to Lender WP, to an affiliated entity, Finco, on April 30, 2019.

60.     Birnbaum's failure to disclose that Cash4Cases had previously granted security interests in Case No. 19-00092 prior to pledging a security interest in the entire funded amount to Investor C was a material omission, and his and Cash4Cases' representation in the ISA that the collateral was "free o[f] any liens" was materially false. Birnbaum knew or was reckless in not knowing that Cash4Cases had made the prior security interest grants because he signed the documents selling or assigning the interests on behalf of Cash4Cases to all three of Investor C, Lender WP, and Finco.

      **(d)**     **Neither Birnbaum nor Cash4Cases Disclosed to Investor A that Cash4Cases Had Granted Some or All of Its Security Interests Prior to Assigning a Security Interest in the Same Recovery to Investor A**

61.     Birnbaum, on behalf of Cash4Cases, recited in each of Investor A's ISAs that Cash4Cases was granting Investor A a "security interest in the [Name of the Funded Litigant's] case which has and [sic] estimated settlement value of [$_____]"— the amount Birnbaum

estimated as the recovery expected on settlement or after trial. Birnbaum did not disclose to Investor A that Birnbaum had previously pledged some or all of Cash4Cases' interests in those recoveries to other investors or lenders.

62.    The representations in Investor A's ISAs made clear that Cash4Cases was granting Investor A all of Cash4Case's interest in the recovery from an identified case. As a result, Investor A would have considered the fact that all or some of Cash4Cases' security interest in recoveries from a particular case had already been assigned to a different funder important to his decision to enter into any investment agreement with Cash4Cases secured by that particular case recovery. Birnbaum's failure to disclose Cash4Cases' previous assignments of security interests in that case was a material omission.

63.    In an ISA dated February 1, 2019, offered by Birnbaum in consideration of Investor A's $50,000 investment, Cash4Cases purported to grant Investor A a "security interest in the ["B.C."] case which has and [sic] estimated settlement value of $3,000,000."

64.    However, Birnbaum did not disclose that on June 16, 2018, Cash4Cases had assigned its full interest in B.C.'s litigation recovery up to the amount it funded, or $288,054, to its Affiliate, Diversified I. Nor did he disclose that one month after the transfer to Diversified I, on July 18, 2018, Birnbaum again transferred Cash4Cases' purported $288,054 interest to Lender LF.

65.    Birnbaum signed both the agreement transferring Cash4Cases' interest to Diversified I and the agreement assigning its interest to Lender LF, as well as the ISA with Investor A. As a result, Birnbaum knew, or was reckless in not knowing, that Cash4Cases had already assigned any interest it had in the B.C. case prior to assigning it to Investor A.

66.    Investor A entered into two more ISAs with Cash4Cases that purported to assign

19

him Cash4Cases' security interest in a case that Birnbaum had already assigned to another funder. On August 16, 2019, Investor A entered into two separate ISAs, investing a combined $70,000. In consideration of those investments, Cash4Cases granted Investor A "a security interest in the ["R.G."] case" and "a security interest in the ["D.A."] case." On behalf of Cash4Cases, Birnbaum represented that the R.G. case had an "estimated settlement value of $950,000." He represented that the D.A. case had an "estimated settlement value of $1,200,000."

67.    But Birnbaum did not disclose that Cash4Cases' interest in the funded amounts for both cases had previously been transferred by him to others. On January 30, 2019, Cash4Cases, through an agreement Birnbaum signed, assigned a security interest of $107,950 in recoveries from the R.G. case to "Lender USC." Thereafter, on April 30, 2019, Cash4Cases, through Birnbaum, assigned its interest in all amounts funded to R.G. to its Affiliate, Finco.

68.    Similarly, Birnbaum did not disclose to Investor A that he had previously transferred Cash4Cases' entire interest in the D.A. case to a number of Cash4Cases' funders and its Affiliates in multiple transactions. On June 16, 2018, Birnbaum had assigned $5,300 of the D.A. recoveries to Diversified I. On November 16, 2018, he had sold Cash4Cases' interest in $3,118.14 of the D.A. recoveries to Lender WP. On April 30, 2019, Birnbaum transferred $121,293 of Cash4Cases' interest in the D.A. recoveries to Finco. Finally, notwithstanding that by April 30, 2019, Birnbaum had transferred all of Cash4Cases' interest in the D.A. recoveries to Finco, Birnbaum sold $113,343 of Cash4Cases' purported interest in the D.A. case to Lender WP on May 6, 2019. Thus, by the time he pledged all of Cash4Cases' interest in the D.A. case to Investor A, Cash4Cases had no interest left to pledge.

**C.    Birnbaum Misappropriated Investor Funds**

69.    Birnbaum misappropriated at least two investors' investments, diverting them for his own personal expenses or to pay off earlier funders to or investors in Cash4Cases.

*(1)    Birnbaum Used Some of Investor C's Funds to Pay Back Earlier Investors*

70.    In early 2017, at a meeting with Investor C, Birnbaum explained Cash4Cases' business model and told Investor C that if he invested, Cash4Cases would lend Investor C's money to tort litigants.

71.    Following his meeting with Birnbaum, Investor C made successive investments in Cash4Cases, starting with a $200,000 investment on March 27, 2017, and eventually totaling more than $1 million.  On July 26, 2017, pursuant to an ISA dated July 21, 2017, Investor C made an additional $600,000 investment in Cash4Cases (and rolled over a previous $400,000 investment), and received Cash4Cases' pledge of its security interest in recoveries from Funded Litigants to which Cash4Cases had purportedly advanced more than $3 million.  But, contrary to Birnbaum's representation to Investor C that he would use his investments to make advancements to new or existing tort litigants, Birnbaum deposited Investor C's new $600,000 investment on July 27, 2017 and used $197,506 of it to pay back the investment of a different Cash4Cases investor, "Investor L," the next day.  Birnbaum then used $2,500 to pay interest to two other investors, Investor EKD and "Investor BAR" four days later, on July 31, 2017, and, on that day even used $5,000 of it to pay Investor C himself.

72.    Immediately prior to the July 27, 2017 deposit of Investor C's money into Cash4Cases' account, that account held only a little more than $78,000, and no other deposits were credited to the account during this time.

### (2)    Birnbaum Used Some of Investor D's Funds to Buy a House, for Personal Expenses and to Pay Off Earlier Funders

73.     Birnbaum also misappropriated investor assets to buy a multimillion-dollar house for himself in New Jersey and pay personal expenses.

74.     When Birnbaum spoke with Investor D to explain and solicit her first investment in December 2018, Birnbaum told her that Cash4Cases would use the money she invested to make new advances to tort litigants.

75.     Contrary to Birnbaum's representations to Investor D in their December 2018 phone call, Birnbaum did not use her investment amounts solely to fund advances to tort litigants. In fact, less than two hours after Investor D's wire of $1 million hit Cash4Cases' bank account on September 19, 2019 (an account that held less than $5,000 immediately prior to the infusion of Investor D's money), Birnbaum directed more than half the funds, or $530,000, to a law firm's account to fund the contract deposit for a $5 million home in northern New Jersey. On the same day, Birnbaum used more than $20,000 from Investor D's investment to pay off his personal credit card and another $22,000 to pay another Cash4Cases funder. The next day, with less than $10,000 in new deposits into the account, Birnbaum directed an additional $100,000 to pay still another Cash4Cases funder.

### D.    In the Fall of 2019, Birnbaum's Fraud Was Uncovered

76.     Throughout the period in which Birnbaum and Cash4Cases were accepting investments from Investors A, B, C and D, Birnbaum was also still obtaining funding for Cash4Cases' business from institutional lenders and funders.

77.     In mid- to late-summer 2019, certain of the institutional lenders or funders to Cash4Cases and/or its Affiliates began to suspect that Birnbaum may have been siphoning settlement proceeds he received on cases pledged or sold to those funders rather than distributing

22

the proceeds to the funders.  And they suspected that Birnbaum may have been using those paid-off cases as collateral for new loans by reflecting them as open rather than closed on his lists of available collateral.

78.     After the institutional funders confronted Birnbaum with their suspicions, Birnbaum hired two lawyers to negotiate an orderly wind-down of Cash4Cases and its Affiliates' businesses, with a goal of maximizing returns to all investors and funders.

79.     In connection with those efforts, Birnbaum's lawyers held a conference call for all of Cash4Cases' and its Affiliates' lenders, funders and investors on or about November 20, 2019. In that call, the lawyers walked the participants through a PowerPoint presentation that detailed at least some of Birnbaum's fraudulent conduct.  Birnbaum's lawyers admitted that Birnbaum (1) had pledged, assigned or sold the same security interests in the same assets to more than one lender, funder or investor; and (2)  had offered already paid-off interests in cases as collateral for new loans and investments.

## FIRST CLAIM FOR RELIEF
**Violations of and/or Aiding and Abetting Violations of Section 17(a) of the Securities Act**

80.     The Commission realleges and incorporates by reference herein each and every allegation in paragraphs 1 - 79.

81.     Birnbaum, directly or indirectly, singly or in concert with others, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, in the offer or sale of securities, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (3) knowingly, recklessly, or negligently has

23

engaged in one or more transactions, practices or courses of business which operated or would operate as a fraud or deceit upon a purchaser.

82.    By virtue of the foregoing, Birnbaum, directly or indirectly, violated, and unless restrained and enjoined, will continue violating, Sections 17(a)(1), (a)(2) and (a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (a)(2) and (a)(3)].

83.    In the alternative, Birnbaum, directly or indirectly, knowingly or recklessly provided substantial assistance to Cash4Cases, which, directly or indirectly, singly or in concert with others, in the offer or sale of a security, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (3) knowingly, recklessly, or negligently has engaged in one or more transactions, practices or courses of business which operated or would operate as a fraud or deceit upon a purchaser.

84.    By virtue of the foregoing, Birnbaum aided and abetted, and unless restrained and enjoined, will continue aiding and abetting, violations of Sections 17(a)(1), (a)(2), and (a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (a)(2) and (a)(3)] in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)].

## SECOND CLAIM FOR RELIEF
### Violations of and/or Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a), (b) and (c) Thereunder

85.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 - 79.

86.    Birnbaum, directly or indirectly, singly or in concert with others, in connection

24

with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce or of the mails or of a facility of a national securities exchange (1) to employ devices, schemes, or artifices to defraud; (2) to make untrue statements of a material fact or to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) to engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

87. By virtue of the foregoing, Birnbaum violated, and unless restrained and enjoined, will continue violating, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b) and (c) [17 C.F.R. §§ 240.10b-5(a), (b) and (c)].

88. In the alternative, Birnbaum, directly or indirectly, provided knowing and substantial assistance to Cash4Cases, which, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce or of the mails or of a facility of a national securities exchange (1) to employ devices, schemes, or artifices to defraud; (2) to make untrue statements of a material fact or to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) to engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

89. By virtue of the foregoing, Birnbaum aided and abetted, and unless restrained and enjoined, will continue aiding and abetting, violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R.§§ 240.10b-5(a), (b) and (c)] in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Birnbaum, his agents, servants, employees and attorneys and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating, directly or indirectly, Sections 17(a)(1), (a)(2) and (a)(3) of the Securities Act [15 U.S .C. §§ 77q(a)(l), (a)(2) and (a)(3)];

### II.

Permanently restraining and enjoining Birnbaum, his agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b) and (c) [17 C.F.R.§§ 240.10b-5(a), (b) and (c)];

### III.

Permanently prohibiting Birnbaum from acting as an officer or director of a public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

### IV.

Ordering Birnbaum to disgorge all ill-gotten gains, plus prejudgment interest thereon, pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5)and 78u(d)(7)];

**V.**

Ordering Birnbaum to pay civil money penalties pursuant to 20(d) of the Securities Act

[15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

**VI.**

Granting such other and further relief as this Court deems just and appropriate.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this

case be tried to a jury.


Dated:  New York, New York
         September 28, 2021

               By:   RICHARD BEST  Digitally signed by RICHARD BEST
                                        Date: 2021.09.28 13:25:39 -04'00'
                   Richard R. Best
                   Sanjay Wadhwa
                   Judith Weinstock
                   Nancy A. Brown
                   Shannon Keyes[1]
                   Attorneys for the Plaintiff
                   SECURITIES AND EXCHANGE
                     COMMISSION
                   New York Regional Office
                   Brookfield Place
                   200 Vesey Street, Suite 400
                   New York, New York 10281
                   (212) 336-1023 (Brown)
                   Email:  brownN@sec.gov

---

[1] Not admitted in the Southern District of New York, but *pro hac vice* motion forthcoming.