UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | No. 21 Civ. 8047 (JMF) |
| v. | |
| JAESON BIRNBAUM, | ECF Case |
| Defendant. | |

**JUDGMENT AS TO DEFENDANT JAESON BIRNBAUM**

The Securities and Exchange Commission having filed a Complaint and Defendant

Jaeson Birnbaum having entered a general appearance; consented to the Court's jurisdiction over

Defendant and the subject matter of this action; consented to entry of this Judgment; waived

findings of fact and conclusions of law; and waived any right to appeal from this Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is

permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of

interstate commerce, or of the mails, or of any facility of any national securities exchange, in

connection with the purchase or sale of any security:

(a)       to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], Defendant is prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated from July 21, 2017, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity

of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

VIII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.


Dated:  October 12, 2021 ,  _____

_____
UNITED STATES DISTRICT JUDGE


All deadlines are hereby STAYED.  In light of that, the conference scheduled for December 17, 2021, is ADJOURNED sine die.  By January 13, 2022, the parties shall file a joint letter proposing a plan for how this case shall proceed.  SO ORDERED.


October 12, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                                  Plaintiff,

                    v.

JAESON BIRNBAUM,

                                  Defendant.

No. 21 Civ. 8047 (JMF)

ECF CASE

---

**CONSENT OF DEFENDANT JAESON BIRNBAUM**

1.      Defendant Jaeson Birnbaum ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Jaeson Birnbaum*, Crim. No. 21 Cr. 0595 (PAC) (S.D.N.Y.) ("*United States v. Birnbaum*"), Defendant pleaded guilty to securities fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.  In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Birnbaum*.

3.      Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things:

        (a)      permanently restrains and enjoins Defendant from violations of the

Securities Exchange Act of 1934 (the "Exchange Act") Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], and Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)]; and

(b)    permanently prohibits Defendant, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

4.    Defendant agrees that the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act.  Defendant further agrees that the amounts of the disgorgement and civil penalty shall be determined by the Court upon motion of the Commission, and that prejudgment interest shall be calculated from July 21, 2017, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).  Defendant further agrees that in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn

deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

5.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

6.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.      Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

11.      Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims

3

asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or

representation has been made by the Commission or any member, officer, employee, agent, or

representative of the Commission with regard to any criminal liability that may have arisen or

may arise from the facts underlying this action or immunity from any such criminal liability.

Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding,

including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges

that the Court's entry of a permanent injunction may have collateral consequences under federal

or state law and the rules and regulations of self-regulatory organizations, licensing boards, and

other regulatory organizations.  Such collateral consequences include, but are not limited to, a

statutory disqualification with respect to membership or participation in, or association with a

member of, a self-regulatory organization.  This statutory disqualification has consequences that

are separate from any sanction imposed in an administrative proceeding.  In addition, in any

disciplinary proceeding before the Commission based on the entry of the injunction in this

action, Defendant understands that he shall not be permitted to contest the factual allegations of

the complaint in this action.

    12.    Defendant understands and agrees to comply with the terms of 17 C.F.R.

§ 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant

or respondent to consent to a judgment or order that imposes a sanction while denying the

allegations in the complaint or order for proceedings."  As part of Defendant's agreement to

comply with the terms of Section 202.5(e),  Defendant acknowledges the guilty plea for related

conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be

made any public statement denying, directly or indirectly, any allegation in the complaint or

creating the impression that the complaint is without factual basis; (ii) will not make or permit to

4

be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     Defendant agrees to waive all objections, including but not limited to, constitutional, timeliness, and procedural objections, to the administrative proceeding that will be

instituted when the judgment is entered.

15.     Defendant agrees that the Commission may present the Judgment to the Court for

signature and entry without further notice.

16.     Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Judgment.

Dated: ___9/28/21___                          _____
                                                            Jaeson Birnbaum

On September 28, 2021, Jaeson Birnbaum . a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent.

                                              _____
                          Michael          Samuel M. Braverman, an Attorney at Law of New
                          Giordano         Jersey


Approved as to form:

_____
Samuel M. Braverman
Fasulo, Braverman & Di Maggio, LLP
225 Broadway, Suite 715
New York, NY 10007
(212) 566-6213
Attorney for Defendant

6

# EXHIBIT A

L9SCbirP

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                         21 CR 595 (PAC)

5   JAESON BIRNBAUM,

6                   Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         September 28, 2021
9                                        2:00 p.m.

10
    Before:
11
                       HON. PAUL A. CROTTY,
12
                                         District Judge
13
                          APPEARANCES
14
    AUDREY STRAUSS,
15       United States Attorney for the
         Southern District of New York
16  BY:  DANIEL LOSS
         Assistant United States Attorney
17
    FASULO BRAVERMAN & DiMAGGIO LLP
18       Attorneys for Defendant
    BY:  MICHAEL GIRODANO
19
    ALSO PRESENT:
20       Postal Inspector Kayla Dobbins

21

22

23

24

25
```

L9SCbirP

```
 1              (Case called)
 2              MR. LOSS:  Good afternoon, Judge.  Daniel Loss for the
 3      government.  I'm joined by Postal Inspector Kayla Dobbins.
 4              MR. GIORDANO:  Good afternoon, your Honor.  Michael
 5      Giordano, standing in for Sam Braverman with the Court's
 6      permission, Fasulo Braverman & DiMaggio.  Present to my left is
 7      Mr. Birnbaum.
 8              THE COURT:  Good afternoon.  We have a lot of
 9      paperwork to get through.  We're starting with the presentment
10      and then we'll waive indictment, arraign Mr. Birnbaum, and take
11      his guilty plea; is that correct, Mr. Giordano?
12              MR. GIORDANO:  Yes, your Honor.
13              THE COURT:  Do you have the date and time of the
14      arrest?
15              MR. LOSS:  Yes, Judge.  The defendant selfsurrendered
16      this morning to the Postal Inspection Service at approximately
17      7:10 a.m.
18              THE COURT:  Mr. Birnbaum, I'm Judge Crotty.  The
19      purpose of today's proceeding is to advise you of certain
20      rights that you have, inform you of the charges against,
21      consider whether counsel should be appointed for you, decide
22      under what conditions, if any, you should be released.
23              I'm now going to explain certain constitutional rights
24      that you have.  You have the right to remain silent.  You're
25      not required to make any statement.  Even if you already made
```

L9SCbirP

1    statements to the authorities, there is no need for you to make

2    further statements.  Any statements that you do make could be

3    used against you.  You have the right to be released, either

4    conditionally or unconditionally, pending trial, unless I find

5    that there is no condition that would reasonably assure me your

6    presence in court and safety of the community.

7             You have the right to be represented by an attorney

8    during the court proceedings, including this one, and during

9    all questioning by the authorities.  If you cannot afford an

10   attorney, I will appoint one for you to represent you.

11            You're proceeding with retained counsel; is that

12   correct, Mr. Birnbaum?

13            THE DEFENDANT:  Correct.

14            THE COURT:  I have before me an information containing

15   the charges against Mr. Birnbaum.

16            Have you seen this, Mr. Birnbaum?

17            THE DEFENDANT:  Yes.

18            THE COURT:  You've had a chance to talk to

19   Mr. Giordano, Mr. Braverman about it?

20            THE DEFENDANT:  Yes.

21            THE COURT:  You have the right to a hearing on the

22   issue of whether you are the person named in the information.

23   The hearing must be held within 10 days if you are in custody,

24   or 20 days if you are released on bail.

25            As to bail, is there an agreed upon bail package?

L9SCbirP

1          MR. LOSS:  Yes, Judge.

2          THE COURT:  What is it?

3          MR. LOSS:  The parties would propose the following

4     conditions:

5          A $200,000 bond secured by cash or property, surrender

6     of passport and travel documents, and no new travel

7     applications.  I do understand that the defendant has already

8     surrendered his passport to postal agents.  Travel would be

9     restricted to the Southern District of New York, Eastern

10    District of New York, District of New Jersey, and Southern

11    District of Florida where the defendant resides.  Supervision

12    as directed by pretrial services, including substance abuse

13    testing and treatment, and mental health testing and treatment

14    as directed by pretrial services.  The defendant would be able

15    to be released today on his own signature with two weeks to

16    meet the other conditions, including posting of security.

17          THE COURT:  That's correct, Mr. Giordano?

18          MR. GIORDANO:  Yes, your Honor, that's correct.

19          THE COURT:  I accept the bail conditions.  They're

20    fair and appropriate.

21          Let me warn you, Mr. Birnbaum, if you fail to appear

22    in court or if you violate any of the conditions of your

23    release, a warrant will be issued for your arrest, you and

24    anyone who signs the bond will be responsible for paying it in

25    the full amount.  What is it, Mr. Loss?

L9SCbirP

1           MR. LOSS:  $200,000, Judge.

2           THE COURT:  And you may be charged with the separate

3    crime of bail jumping.  In addition, if you commit an offense

4    while you're released, in addition to the sentence proscribed

5    for that offense, you'll be sentenced for an additional term of

6    imprisonment for not more than 10 years if the offense is a

7    felony, or a term of imprisonment for not more than one year if

8    the offense is a misdemeanor.  This term of imprisonment will

9    be executed and any other sentence of prison will be executed

10   when the initial period of imprisonment is completed.

11          Now, for the federal government, I have to advise you

12   under 5(f) that the prosecution has to comply with its

13   obligations under Brady v. Maryland and its progeny, to

14   disclose to the defense all information, whether admissible or

15   not, that is favorable to the defendant, material either to

16   guilt or punishment and known to the prosecution.

17          Possible consequences for noncompliance may include

18   dismissal of individual charges, that is the entire case,

19   exclusion of evidence, and professional discipline or court

20   sanctions on the attorneys responsible.

21          I will be entering a written order more fully

22   describing the obligation and possible consequences of failing

23   to meet it.  And I direct the prosecution to review it and

24   comply with the order.

25          Does the prosecution confirm that it understands its

L9SCbirP

1    obligations and will fulfill them?

2              MR. LOSS:  Yes, your Honor.

3              THE COURT:  We will now proceed to the waiver of

4    indictment and arraignment for Mr. Birnbaum.

5              Have you explained the procedure, Mr. Giordano?

6              MR. GIORDANO:  Yes, your Honor.  If you don't mind,

7    can I confer briefly?

8              THE COURT:  Sure.

9              MR. GIORDANO:  Thank you, your Honor.

10             THE COURT:  We can swear Mr. Birnbaum in now.

11             (Defendant sworn)

12             THE COURT:  Please be seated.  Mr. Birnbaum, can you

13   state your full name for the record and give us your date of

14   birth, please.

15             THE DEFENDANT:  Jaeson Birnbaum, 2/22/74.

16             THE COURT:  How far did you get in school?

17             THE DEFENDANT:  JD.

18             THE COURT:  You're a lawyer?

19             THE DEFENDANT:  Yes.

20             THE COURT:  You're admitted to practice?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you currently under the care of a

23   physician or psychiatrist for any mental or emotional issues?

24             THE DEFENDANT:  I am seeing a psychiatrist.

25             THE COURT:  Are you taking medication?

L9SCbirP

1          THE DEFENDANT:  Yes.

2          THE COURT:  How do you feel today?

3          THE DEFENDANT:  Good.

4          THE COURT:  Do you know what you're doing?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Mr. Giordano is your lawyer?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And also, Mr. Braverman is your lawyer, as

9    well?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now, you're proceeding here by way of

12   information, but you have to understand, Mr. Birnbaum, that you

13   have the right to be charged by an indictment of a grand jury.

14   You can waive that right and consent to being charged by

15   information with the U.S. Attorney.  Instead of an indictment,

16   the felony charges against you are brought by the U.S. Attorney

17   by the filing of an information.  Unless you waive indictment,

18   you may not be charged with a felony unless a grand jury finds,

19   by return of an indictment, that there is probable cause to

20   believe that a crime has been committed and that you committed

21   it.  If you do not waive indictment, the government may present

22   the case to the grand jury and ask it to indict you.  The grand

23   jury, for your information, is composed of at least 16 and not

24   more than 23 persons, and at least 12 grand jurors must find

25   that there is probable cause to believe that you committed the

L9SCbirP

1   crime with which you are charged before you can be indicted.

2   The grand jury might or it might not indict you.  If you waive

3   indictment in front of the grand jury, the case will proceed

4   against you and the U.S. Attorney's information just as though

5   you had been indicted.

6          Have you discussed waiving your right to indictment by

7   the grand jury with your lawyer?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you understand your right to be

10   indicted by a grand jury?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Have any threats or promises been made to

13   induce you to waive indictment?

14          THE DEFENDANT:  No.

15          THE COURT:  Do you wish to waive your right to

16   indictment by grand jury?

17          THE DEFENDANT:  Yes.

18          THE COURT:  I'm going to show you a document and ask

19   you if that's your signature.  We'll mark it as Court

20   Exhibit 1.

21          THE DEFENDANT:  Yes, that is my signature.

22          THE COURT:  Did you talk to Mr. Giordano before you

23   signed it?

24          THE DEFENDANT:  Yes.

25          THE COURT:  I'm going to find that the waiver of

L9SCbirP

1    indictment is knowing and voluntarily made by Mr. Birnbaum.

2    I'm going to accept it and make it part of the court record.

3                You have seen a copy of the information, have you not?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Have you had a chance to consult with

6    Mr. Giordano?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Do you want the indictment read or do you

9    waive the reading of the indictment?

10               MR. GIORDANO:  Yes, your Honor, waive the reading of

11   the indictment.

12               THE COURT:  You're going to waive the reading.  You

13   want to enter your plea now, Mr. Birnbaum?

14               THE DEFENDANT:  Yes.

15               THE COURT:  What's your plea?

16               THE DEFENDANT:  Not guilty.

17               THE COURT:  Your plea is not guilty?

18               MR. GIORDANO:  Your Honor, are we -- I thought we were

19   presenting him first and then -- do you need a formal entrance

20   of a not guilty plea on the arraignment portion or can we move

21   forward with the plea allocution?

22               THE COURT:  Well, I asked him if he wants to plead

23   guilty or not guilty.  He said he wanted to plead guilty, so

24   I'm now going to allocute him on his guilty plea.

25               MR. GIORDANO:  Thank you, your Honor.

L9SCbirP

1            THE COURT:  Unless you have an alternative that you

2     want me to pursue?

3            MR. GIORDANO:  No, your Honor.  Thank you.

4            THE COURT:  So let's go through this again.

5     Mr. Birnbaum, how do you plead to the charges?

6            THE DEFENDANT:  Guilty.

7            THE COURT:  Before I accept that plea, I have to ask

8     you some more questions.

9            Do you understand, first, that you don't have to plead

10    guilty?

11           THE DEFENDANT:  Yes.

12           THE COURT:  You can enter a plea of not guilty and

13    persist in that charge.

14           Do you understand?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Has Mr. Braverman and Mr. Giordano

17    explained to you the information?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you know what you're being charged

20    with?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Have your attorneys explained to you the

23    consequences of pleading guilty?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Are you satisfied with the advice,

L9SCbirP

1    counsel, and representation given to you by your attorneys?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Let me review some of the rights that

4    you're giving up just so you understand.

5              I've already explained to you that you do not have to

6    plead guilty, you can plead not guilty and persist in that

7    plea.

8              Do you understand?

9              THE DEFENDANT:  Yes.

10             THE COURT:  You have a right to a trial by jury of 12

11   people.  At trial you would be presumed innocent, the

12   government would have to prove your guilt beyond a reasonable

13   doubt.  The jury of 12 would have to be unanimous.

14             Do you understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You'd have the right to assistance of

17   counsel for your defense.  If necessary, you could have the

18   Court appoint counsel at trial and every stage of the

19   proceeding.

20             Do you understand?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Your attorney could object to the

23   government's evidence.  You would have the right to see and

24   hear all the witnesses and have them cross examined in your

25   defense.

L9SCbirP

1          Do you understand?

2          THE DEFENDANT:  Yes.

3          THE COURT:  You'd have the right on your part to

4    decline to testify, unless you voluntarily elected to do so in

5    your own defense.  You'd have the right to testify and present

6    evidence and to the use of subpoenas and process to compel the

7    attendance of witnesses to testify.

8          Do you understand?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Should you decide not to testify or put on

11   any evidence, these facts could not be used against you, and

12   the jury would be instructed to not consider your not

13   testifying or your not putting on any evidence.

14         Do you understand?

15         THE DEFENDANT:  Yes.

16         THE COURT:  That's because you're presumed innocent.

17   By entering a plea of guilty, and if that plea is accepted by

18   the Court, there will be no trial and you would waive or have

19   given up your rights to a trial, as well as those rights

20   associated with the trial that I've just described.

21         Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand, by pleading guilty,

24   I'll be able to sentence you just as if the jury had returned a

25   guilty verdict after a full trial on the merits?

L9SCbirP

1          Do you understand?

2          THE DEFENDANT:  Yes.

3          THE COURT:  I'm going to mark as Court Exhibit 2 a

4    letter dated September 15 to Sam Braverman from the government.

5          THE DEPUTY CLERK:  Counsel, do you have extra copies

6    of the plea?

7          MR. LOSS:  Yes.

8          THE COURT:  Mr. Birnbaum, is that your signature on

9    the last page of the document?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Did you talk to your attorney before you

12    signed it?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did he answer all your questions?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you sign it voluntarily?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Did anybody make any threats or promises

19    to induce you to sign this?

20          THE DEFENDANT:  No.

21          THE COURT:  Is there anything you want to ask

22    Mr. Giordano about the letter now?

23          THE DEFENDANT:  No.

24          THE COURT:  Now, count 1 to which you're pleading

25    guilty charges you with securities fraud in violation of Title

L9SCbirP

1    18, United States Code, Section 781(b), 781(f)(F)(T), Title 17,

2    Code of Federal Regulations, Section 240.1(b)(10)(B)(5), Title

3    18 United States Code, Section 2.

4           This carries a maximum term of imprisonment of 20

5    years, the maximum term of supervised release of 3 years, a

6    maximum fine of $5 million, or twice the gross pecuniary gain

7    derived from the offense or twice the gross pecuniary loss to

8    someone other than yourself, and a mandatory $100 special

9    assessment.

10          Do you understand that those are the maximums that can

11   be imposed?

12          THE DEFENDANT:  Yes.

13          THE COURT:  There may be other consequences, as well,

14   including your ability to practice law.

15          THE DEFENDANT:  Yes.

16          THE COURT:  Now, on page 1, in addition to pleading

17   guilty to the offense charged in count 1, you're also agreeing

18   to the admitting the forfeiture allegations associated with

19   count 1.

20          Do you understand?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And you're also agreeing to a schedule of

23   amounts that you have to pay in restitution in the amount of

24   $2,661,072.24.

25          Do you understand?

L9SCbirP

1               THE DEFENDANT:  Yes.

2               THE COURT:  Did you review with Mr. Braverman and

3     Mr. Giordano how the guidelines are calculated, the offense

4     level?

5               THE DEFENDANT:  Yes.

6               THE COURT:  The offense level is set at 22, and your

7     criminal history category is 1, resulting in a guideline range

8     of 41 to 51 months.

9               Do you understand?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Do you understand that neither the

12    probation department or me sitting as a Court is bound by the

13    stipulation of guidelines that we've just reviewed?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you understand that the sentence to be

16    imposed on you will be made by me exclusively?  I have power to

17    sentence you anywhere from zero to the maximum of 20 years.

18              Do you understand that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  In addition to pleading guilty, you're

21    also agreeing to not take a direct appeal or collaterally

22    attack the sentence, any sentence which is within the guideline

23    range of 41 to 51 months.

24              Do you understand?

25              THE DEFENDANT:  Yes.

L9SCbirP

1              THE COURT:  At the bottom of page 4, Mr. Birnbaum,

2      says, do you knowledge that you're accepting this agreement and

3      deciding to plead guilty because you are, in fact, guilty.

4              Is that a true statement?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Mr. Loss, is there anything else you wish

7      me to ask Mr. Birnbaum about this letter?

8              MR. LOSS:  No, Judge.  Thank you.

9              THE COURT:  How about you, Mr. Giordano?

10             MR. GIORDANO:  No, your Honor.  Thank you.

11             THE COURT:  Mr. Loss, could you please rise now and

12     explain what the essential elements are of count 1 and how you

13     established these elements beyond a reasonable doubt.

14             MR. LOSS:  Yes, Judge.  Were this matter to proceed to

15     trial, the government would have to prove each of the following

16     three elements beyond a reasonable doubt:

17             First, that the defendant, in connection with the

18     purchase or sale of securities, did any one or more of the

19     following:

20             1, employed a device, scheme, or artifice to defraud;

21             Or 2, made an untrue statement of a material fact or

22     omitted to state a material fact which would mean what was said

23     under the circumstances misleading;

24             Or 3, engage in an act, practice, or course of

25     business that operated or would operate as a fraud or deceit

L9SCbirP

1   upon a purchaser or seller.

2        That's the first element.

3        The second element that the government would be

4   required to prove beyond a reasonable doubt is that the

5   defendant acted knowingly, willfully, and with the intent to

6   defraud.

7        The third element is that the defendant knowingly used

8   or caused to be used any means or instruments, transportation

9   or communication in interstate commerce or the use of the mails

10   in furtherance of the fraudulent conduct.

11        The government would also be required to prove venue

12   in the Southern District of New York by a preponderance of the

13   evidence.

14        The government proffers that the government would

15   offer witness testimony, documentary proof, and other evidence

16   at trial establishing the facts set forth in the information,

17   and that those facts were proof beyond a reasonable doubt that

18   Mr. Birnbaum is guilty of the securities charge offense, and

19   those facts would establish venue in the Southern District of

20   New York by a preponderance.

21        More specifically, if this case proceeded to trial,

22   the government would offer witness testimony, documents, email

23   communications, and other evidence establishing the following:

24        Jaeson Birnbaum was founder and owner of two

25   litigation finance companies, Cash for Cases and Liberty

L9SCbirP

Bridge, which he operated out of Manhattan in the Southern

District of New York and Franklin Lakes, New Jersey.

From July 2017 to September 2019, Mr. Birnbaum raised

several million dollars for Cash for Cases from investors who

purchased promissory notes, which were securities, pursuant to

promissory note agreements called investor security agreements,

or ISAs.  These ISAs were signed or approved by Birnbaum, and

the ISAs purported to pledge the recoveries of certain lawsuits

that were funded by Cash for Cases as collateral to the

investors, and the ISAs stated that the collateral was in good

standing and free of any liens.

In a number of instances, however, those lawsuits were

not actually funded by Cash for Cases, had previously been

pledged to other investors or lenders of Cash for Cases or

Liberty Bridge, had been sold or transferred to other entities,

or have already concluded and thus had no prospects for further

payout.

The evidence would show that Mr. Birnbaum was aware of

the foregoing because he signed the relevant agreements with

the prior investors and lenders.  He controlled the database

that tracked the status of cases funded by Cash for Cases and

Liberty Bridge, and he exercised primary control over all

aspects of Cash for Cases and Liberty Bridge's finances.

Additionally, the evidence would show that

Mr. Birnbaum told prospective investors, orally, that their

L9SCbirP

money would be used solely to fund certain lawsuits, and that,

contrary to that representation, he used hundreds of thousands

of dollars of funds from investors for personal purposes,

including the down payment on the purchase of a house and to

make payments to earlier investors and lenders.

The evidence that the government would offer at trial

would include, among other things, the testimony of victim

investors, in that, in substance and in part, Mr. Birnbaum told

them, prior to their investments, that their money would be

used by Cash for Cases solely to fund litigations and that the

case recoveries pledged to them as collateral were not being

shared with other investors.

In addition, the evidence would include testimony of a

subordinate employee, that Mr. Birnbaum directed him to make

entries into a database that was used to track the status of

litigations funded by Cash for Cases and Liberty Bridge, and,

in particular, that Mr. Birnbaum directed him to change the

status of cases in that database to make it appear that they

were available and pledged as collateral to new investors or

lenders when, in fact, the litigations had concluded and the

applicable payouts had already been made.  The evidence would

also include bank account records, funding agreements for

underlying relevant lawsuits, the investor security agreements,

all of which would establish beyond a reasonable doubt that

Mr. Birnbaum committed the securities fraud charged in count 1

L9SCbirP

1   of the information, and which would also establish venue in the

2   Southern District of New York by a preponderance.

3          THE COURT:  Thank you.  Do you have a forfeiture order

4   to sign now or does it come later?

5          MR. LOSS:  It will come at sentencing, Judge.

6          THE COURT:  The same with restitution?

7          MR. LOSS:  Yes, Judge.

8          THE COURT:  Mr. Giordano, you and your firm conducted

9   an investigation of this matter?

10          MR. GIORDANO:  Yes, Judge.

11          THE COURT:  Do you have any reason why Mr. Birnbaum

12   should not plead guilty?

13          MR. GIORDANO:  No, your Honor.

14          THE COURT:  Mr. Birnbaum, could you please rise now

15   and tell us in your own words what you did.

16          THE DEFENDANT:  Sure.

17          MR. GIORDANO:  Your Honor, just briefly, I want to

18   inform the Court I have a single-page, four bullet points for

19   his allocution.

20          THE COURT:  That's fine.

21          THE DEFENDANT:  So, in my words, from approximately

22   2017 to 2019, I offered a product, and that product was

23   essentially assigning funded or prefunded cases to investors as

24   a debt instrument.  They were pretty much essentially

25   promissory notes.  I later found out that, in order to deal

L9SCbirP

1   with promissory notes, you either have to be registered with

2   the SEC or the broker dealer, and I was neither of the above.

3           So, for many years, things went very well.  Business

4   and things were great.  But, in all environments, things went

5   quickly out of control and cash was tight and I did wrong

6   things.

7           THE COURT:  What are the wrong things that you did?

8           THE DEFENDANT:  I pledged cases that were assigned to

9   debt for the debt instruments to more than one investor or I

10  overinflated the potential outcome of a case to investors, and

11  I was wrong for doing that.  And, in fact, I defrauded them by

12  doing that.  And I take responsibility.  And I really let

13  things get out of control when I shouldn't have.

14          As far as interstate commerce and the nexus to the

15  Southern District, I did have an office in New York.  I also

16  used the mail and email system to obtain clients, as well.

17  And, again, I truly regret my actions and I hope to make the

18  victims -- to make the victims as whole as possible, and I just

19  shouldn't have let this get out of control, but I did.

20          THE COURT:  Did you spend any of the money for your

21  own purposes?

22          THE DEFENDANT:  There was some money for my own

23  purposes, yes.

24          THE COURT:  Mr. Loss, is that adequate for your

25  purposes?

L9SCbirP

1          MR. LOSS:  Judge, would it be possible to ask

2     Mr. Birnbaum if when he acted he did so knowingly, willfully,

3     and with the intent to defraud.

4          THE COURT:  Mr. Birnbaum.

5          THE DEFENDANT:  Yes, I did so willfully, knowingly,

6     and with the intent to defraud.

7          THE COURT:  Anything else, Mr. Loss?

8          MR. LOSS:  No, Judge.

9          THE COURT:  Mr. Giordano, how about you?

10          MR. GIORDANO:  Nothing, your Honor.

11          THE COURT:  Please be seated, Mr. Birnbaum.

12          It's the finding of the Court in the case of United

13     States v. Jaeson Birnbaum that Mr. Birnbaum is fully competent

14     and capable of entering an informed plea.  He's aware of the

15     nature of the charges and the consequences of pleading guilty.

16     The plea of guilty is knowing, it's voluntary, it's supported

17     by an independent basis and fact containing each of the

18     essential elements of the offense.  I therefore accept the plea

19     and the defendant is now adjudged guilty of count 1 in the

20     information.

21          Do you have a date for sentencing?

22          THE DEPUTY CLERK:  January 6th, 2022, at 12 noon.

23          THE COURT:  Is that all right with you, Mr. Loss and

24     Mr. Giordano?

25          MR. LOSS:  Yes, it works for the government, Judge.

L9SCbirP

1    Thank you.

2            MR. GIORDANO:  Your Honor, if I can briefly check

3    Mr. Braverman's calendar.  Yes, that works for defense, your

4    Honor.  Thank you.

5            THE COURT:  Thank you.  Anything else?

6            MR. LOSS:  Not from the government, Judge.  Thank you.

7            MR. GIORDANO:  Nothing from defense, your Honor.

8    Thank you for the courtesy.

9            THE COURT:  Very well.  The matter is adjourned.

10                              * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25